UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE DANIEL ORELLANA JUAREZ,<br><br>          Petitioner,<br><br>v.<br><br>ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility<br>PATRICIA HYDE, Field Office Director,<br>TODD LYONS, Acting Director U.S. Immigrations and Customs Enforcement,<br>and KRISTI NOEM, U.S. Secretary of Homeland Security,<br><br>          Respondents. | C.A. No. 25-11266-MJJ |

## DECLARATION OF KERRY E. DOYLE

I, Kerry E. Doyle hereby declare under penalty of perjury that the following statements are based on my personal knowledge and are true and correct to the best of my knowledge:

1. My name is Kerry Doyle. I am currently Of Counsel with Green and Spiegel, LLC, which is an immigration firm based in Philadelphia, Pennsylvania. I graduated cum laude from American University, Washington College of Law with a J.D. and The George Washington University with a B.A. in Political Science. I am a member of the Commonwealth of Massachusetts Bar, the Supreme Court Bar and the bars of several U.S. Courts of Appeals and U.S. District Courts.

2. I have practiced immigration, asylum, and refugee law since 1993. I have served in the government and worked in both the non-profit and private sector. I served as Principal Legal Advisor ("PLA") for United States Immigration and Customs Enforcement ("ICE") from September 2021 through September 2024. During that time, I also served first on detail as Acting Deputy General Counsel, Office of General Counsel ("OGC"), Department of Homeland Security ("DHS") from February 2024 through May 2024, and then as Deputy General Counsel from September 2024 through December 2024. I was appointed as an Immigration Judge and served in that position from December 2024 through mid-February 2025. I managed Graves and Doyle, a private immigration firm, in Boston, MA for twenty years after working in the non-profit sector for almost ten years. I have taught immigration, asylum and refugee law as an adjunct professor at both University of Miami School of Law and Suffolk University School of Law. I previously served as Chair of the New England Chapter of the American Immigration Lawyers Association ("AILA").

3. I have been a frequent speaker at immigration conferences and national lawyer trainings, including recurring trainings co-hosted by the Boston Immigration Court (part of the Executive Office for Immigration Review ("EOIR")) and the New England chapter of AILA, with a specific focus on training pro-bono attorneys volunteering to represent noncitizens in immigration bond hearings. I have submitted testimony as an expert witness on immigration law topics in both state and federal courts. In light of my expertise, while in private practice, I was selected by the Immigration Court to represent detained individuals who have been deemed incompetent through the National Qualified Representative Program. In the past, I worked closely with the Massachusetts Immigrant and Refugee Advocacy Coalition ("MIRA") and the Massachusetts Law Reform Institute ("MLRI") providing technical assistance and public testimony on various immigration-related policy issues before the state legislature and the Boston City Council. More recently, I have testified on immigration topics before the Federal Law Enforcement Subcommittee of the Government Oversight Committee in the U.S. House of Representatives.

4. As the PLA at ICE, I served as general counsel for ICE supporting the Acting Director of ICE and other leaders in ICE and DHS, providing legal advice on a wide variety of issues, including immigration litigation and prosecutorial strategy and policy. I oversaw the more than 1,700 attorneys and staff who work for the Office of the Principal Legal Advisor ("OPLA") across the country. I was responsible for establishing the direction and priorities of our office in alignment with OGC, ICE and DHS leadership.

5. I am providing this declaration in my personal capacity. The statements and opinions herein should not be construed to represent the position of the Department of Homeland Security or any components therein, the Department of Justice, or Green and Spiegel, LLC.

6. I am familiar with the practices and procedures for standard removal proceedings in the Immigration Court, and for Expedited Removal. Paragraphs 7-14, below, summarize those practices and procedures.

7. Standard removal proceedings are commenced when a noncitizen is served with a charging document, known as a Notice to Appear ("NTA"). The NTA must be filed with the Immigration Court for jurisdiction to vest in the court and for removal proceedings to commence. An NTA is prepared and processed by ICE if the noncitizen is arrested by that component of DHS. Other components of DHS may also prepare, serve, and file NTAs with the Immigration Court, including United States Customs and Border Protection ("CBP") and United States Citizenship and Immigration Services ("USCIS").

8. During standard removal proceedings, conducted pursuant to 8 U.S.C. § 1229a, noncitizens have a number of procedural protections pursuant to the governing statutes and regulations. A removal proceeding is conducted before an Immigration Judge, who is employed by EOIR in the Department of Justice, not by the immigration enforcement agencies. The Immigration Court has recognized that noncitizens in removal proceedings have a right to be represented by counsel, if they choose to engage counsel (counsel is not generally appointed). Noncitizens and the government have an opportunity to present evidence to the Immigration Judge in the form of documents and testimony. The government in these proceedings must establish that the noncitizen is removable, if that is how they are charged by the NTA, and once established, the noncitizen has the right to apply for any relief from removal that they may be eligible to receive. There are many potential forms of relief that may be available

to a noncitizen depending on their particular circumstances, including cancellation of removal, asylum, withholding of removal, relief under the Convention Against Torture ("CAT"), voluntary departure, adjustment of status, and certain waivers of inadmissibility and deportability.

9. Additionally, in standard removal proceedings, there is an automatic right to appeal the Immigration Judge's decision to the Board of Immigration Appeals ("BIA"). If the BIA affirms removal, the noncitizen may appeal the BIA decision in their case to the U.S. Court of Appeals via a Petition for Review ("PFR"). If the noncitizen pursues appeal, he or she may not be removed until, at a minimum, the BIA affirms the order of removal. If the BIA affirms the order of removal, the U.S. Court of Appeals may grant a stay of removal until the PFR is finally resolved.

10. During standard removal proceedings, a noncitizen without a criminal record or involvement in terrorism is not required to be detained. *See* 8 U.S.C. § 1226. ICE may choose, in its discretion, to release such noncitizens pending resolution of their removal proceedings. If ICE elects to detain the noncitizen, then the noncitizen may request a custody redetermination by the Immigration Judge, which is colloquially called a bond hearing. During the bond hearing, all parties may present evidence concerning whether the noncitizen is a flight risk or danger to the community. Within the First Circuit (including the Immigration Court in Massachusetts), the government bears the burden to prove either flight risk by a preponderance of the evidence or dangerousness by clear and convincing evidence. If the government does not prove flight risk or dangerousness, the Immigration Judge releases the noncitizen on a money bond and/or conditions pending resolution of the removal proceedings.

11. In contrast to standard removal proceedings, there is an alternative process for removal of noncitizen called Expedited Removal ("ER"). *See* 8 U.S.C. § 1225(b). ER orders are not entered by an Immigration Judge or through any process in the Immigration Court. Rather, a low-level immigration enforcement official issues the ER order directly to the noncitizen, generally during an initial encounter. ICE and the other immigration agencies do not recognize any right to be represented by counsel during the ER process, and ER decisions are generally made in custodial situations where the noncitizen has no access to counsel and no ability to freely communicate with the outside world. ER orders are not subject to appeal to the BIA, and, to the best of my knowledge, cannot be challenged through a PFR to the U.S. Court of Appeals.

12. A noncitizen cannot file directly for any relief to stop their removal when in ER, other than those who express a fear of persecution upon return to their destination country. These noncitizens are screened for reasonable or credible fear of return. If fear is preliminarily established, their claim for fear-based relief is processed by the Immigration Court. If not, the adverse finding may be appealed to an Immigration Judge, but no further. Noncitizens in ER have no access to any other forms of immigration relief that are potentially available in standard removal proceedings.

13. In my experience, the government consistently takes the position that people in ER are not eligible for a bond hearing, but are rather mandatorily detained. *See* 8 U.S.C. § 1225.

14. Under the relevant statute, ER may not be applied to noncitizens who have been present in

the United States for two years or more. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II). However, when an immigration enforcement official makes a determination that the noncitizen has been present for less than two years, that determination is not appealable administratively within the agency, is not appealable to an Immigration Judge, is not appealable to the BIA, and, to the best of my knowledge, cannot be challenged through a PFR to the U.S. Court of Appeals. If the U.S. District Courts will not adjudicate challenges to that determination, I am not aware of any other court that will.

Executed May 10, 2025.

                                                                   Kerry E. Doyle