## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSE DANIEL ORELLANA JUAREZ, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | |
| ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility PATRICIA HYDE, Field Office Director, TODD LYONS, Acting Director U.S. Immigrations and Customs Enforcement, and KRISTI NOEM, U.S. Secretary of Homeland Security, | ) ) ) ) ) ) ) | C.A. No. 25-11266-MJJ |
| Respondents. | ) ) ) | |

## JOINT STATUS REPORT
## PURSUANT TO MAY 12, 2025 ORDER

Pursuant to the Court's May 12, 2025 Order (D.E. 16), the parties submit this joint status report. After this case was filed, the government removed petitioner Jose Daniel Orellana Juarez ("Mr. Orellana") from the expedited removal process. *See* Status Report (D.E. 15). Mr. Orellana remained detained. On May 27, Mr. Orellana received a bond hearing in the Immigration Court, and the Immigration Judge ordered him released on a $4,000 bond and certain conditions. On May 28, he paid the bond, and he was released from the Plymouth County Correctional Facility pursuant to the Immigration Judge's order.

As set forth below, the parties take different positions on whether this matter is concluded. Although Mr. Orellana is no longer at Plymouth, he contends that that this matter is not moot because—contrary to the Immigration Judge's order—U.S. Immigration and Customs

1

Enforcement ("ICE") is unilaterally and unlawfully subjecting him to a new form of custody in the form of 24/7 GPS monitoring and onerous restrictions under ICE's Intensive Supervision Appearance Program ("ISAP").  According to Mr. Orellana, ICE has also refused to return Mr. Orellana's sensitive personal property seized during his arrest, specifically his cell phone and his wallet.[1]  Respondents take the position that the petition is moot because GPS monitoring and ISAP restrictions do not amount to his being in custody and, even if they did, ICE may impose such restrictions and any relief rests with the Immigration Judge.

## MR. ORELLANA'S STATUS REPORT

Although Mr. Orellana prevailed at his bond hearing and is no longer in jail, ICE is unlawfully subjecting him to an alternative form of custody: 24/7 GPS monitoring of his location and activities through a monitor attached to his leg, implemented with onerous conditions through ICE's ISAP program.  The Immigration Judge ordered certain conditions of release, but did *not* authorize or order GPS monitoring or ISAP as a condition.  Additionally, incident to Mr. Orellana's release from jail, ICE unlawfully failed to return property it took from Mr. Orellana at the time of his arrest, specifically his cell phone and his wallet.  There is no lawful basis for ICE to continue to keep Mr. Orellana's property, and the retention of his cell phone is particularly concerning given the high volume of personal information contained on any cell phone.  As explained below, and as further set forth in the accompanying supplemental declaration of attorney Mara Weisman, the Court should act to remedy ICE's unlawful actions and release Mr. Orellana from his unlawful continuing custody.

---

[1] As this status report was being finalized, ICE's counsel reported to Mr. Orellana's counsel that ICE has located the wallet and cell phone, and they are being returned.  Assuming these items are, in fact, returned, that issue will be resolved.

*A.  Summary of Factual Developments*

As the Court is aware from the declarations of Mr. Orellana (D.E. 10) and attorney Weisman (D.E. 11), Mr. Orellana has no criminal record.  On May 5, ICE stopped Mr. Orellana's vehicle near a gas station in Framingham (apparently while looking for somebody else) and arrested him.  ICE summarily issued Mr. Orellana an order of expedited removal, even though Mr. Orellana has been demonstrably present in the United States for greater than two years and is statutorily ineligible for expedited removal.  As outlined in the declaration of Kerry E. Doyle (D.E. 13), this unlawful application of expedited removal to Mr. Orellana was highly prejudicial.  The government deprived Mr. Orellana of virtually all of the procedural protections available in standard removal proceedings in the Immigration Court, including a bond hearing.

This petition was filed on May 8.  On the morning of May 12, the government agreed to take Mr. Orellana out of expedited removal and place him in standard removal proceedings.  On that basis, the parties agreed to postpone the existing schedule, including a status conference that had been scheduled for later that afternoon.  *See* Notice of May 12 Status Conference (D.E. 7); Status Report and Assented-to Motion to Continue (D.E. 15).  Later that day, the Court ordered this status report to be filed, and set a status conference for June 5 at 2 p.m.  *See* Order (D.E. 16).

In standard removal proceedings, Mr. Orellana is eligible for release from detention. Specifically, because Mr. Orellana has no criminal record and no alleged ties to terrorism, he is eligible for a custody redetermination hearing (colloquially called a "bond hearing") conducted and decided by an Immigration Judge.  *See* 8 U.S.C. § 1226; 8 C.F.R. §§ 1003.19, 1236.1(d).  For detainees such as Mr. Orellana, a bond hearing with strong procedural protections decided by a neutral magistrate is not merely permissible—it is required as a matter of constitutional due process. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 40 (1st Cir. 2021) (constitutional requirement

3

for bond hearing with strong procedural protections for § 1226(a) immigration detainees); *Brito v. Garland*, 22 F.4th 240, 256-57 (1st Cir. 2021) (affirming class-wide declaratory judgment of same).

Consequently, on May 13, Mr. Orellana, through counsel, filed a request for a bond hearing in the Immigration Court.  On May 15, the Immigration Court issued a notice to all parties that the bond hearing would be conducted on May 27.  Both Mr. Orellana and the government had ample notice of the bond hearing and the opportunity to submit evidence, and both did submit evidence.

On May 27, Mr. Orellana received his bond hearing.  The government principally argued that Mr. Orellana should not be released because he was purportedly a flight risk.  The Immigration Judge rejected that argument and ordered Mr. Orellana to be released on a $4,000 bond.  The Immigration Judge also imposed these conditions, and *only* these conditions:

> The Respondent is hereby warned of his obligation to file Form EOIR-33 whenever he changes his address during the pendency of this proceeding.  The Respondent is also warned of his obligation to attend the hearings at the time and place designated by the immigration court.  The Respondent's failure to attend any hearing scheduled by the immigration court may result in a removal order entering in his absence.  Finally, the Respondent must learn and comply with the laws of the United States and the state of his residence.

The bond order did not order GPS monitoring as a condition of release.  The bond order did not impose any location-based conditions, such as travel restrictions, an exclusion zone, a curfew, or house arrest.  The bond order did not authorize ICE to select any additional conditions that had not been ordered by the Immigration Court.

Mr. Orellana paid the bond and was released from jail on May 28.  However, upon release from jail, ICE placed him into a new form of custody—24/7 GPS monitoring—without authorization from the Immigration Judge and contrary to the limited scope of conditions selected by the Immigration Judge at the bond hearing. Further, ICE enrolled Mr. Orellana in its "Intensive

4

Supervision Appearance Program," or "ISAP," which generally involves onerous conditions and restrictions, often including in-person reporting requirements and sometimes even home visits. When Mr. Orellana appeared on the morning of June 2 for his initial ISAP appointment, he was given a list of written and oral conditions, including that (a) he is not allowed to travel outside Massachusetts, except to New Hampshire, Connecticut, or Rhode Island; (b) he should be home by 10 p.m. if possible; and (c) he must continue ISAP check ins, including a phone call on June 3 and an in-person check-in on June 16. Additionally, separate from adding these new conditions, ICE also did not return property it seized from Mr. Orellana at the time of his arrest, specifically his cell phone and his wallet.[2]

B. *Mr. Orellana Remains in Unlawful Custody*

For the reasons explained below, Mr. Orellana continues to request relief from this Court.

First, Mr. Orellana is still in custody, albeit a different form of custody. He is being required to wear a 24/7 GPS monitoring device on his ankle. That device allows ICE to observe Mr. Orellana's every movement. ICE will not only be able to develop a detailed picture of Mr. Orellana's routine activities, but also will be able to gather information about highly personal activities, such as which doctors' offices Mr. Orellana might visit and what lawyers he might consult with. In addition, ICE enrolled Mr. Orellana in an intensive supervision program, which presently appears to include check-ins, a potential curfew, and geographic restrictions,

---

[2] Counsel understand that Mr. Orellana did receive the cash that was in the wallet, but not the wallet or the other contents such as his driver's license and consular ID. Mr. Orellana was told that he could return to attempt to collect these items in a week (on Thursday, June 5), but was also told that they were "lost".

As noted above, as this status report was being finalized, ICE's counsel reported to Mr. Orellana's counsel that ICE has located the wallet and cell phone, and they are being returned. Assuming these items are, in fact, returned, that issue will be resolved.

notwithstanding that the Immigration Judge ordered Mr. Orellana's release on bond with only generic conditions to update his address, attend hearings, and follow the law. Although Mr. Orellana is not in jail, his freedoms and privacy are being so severely curtailed that he remains within the definition of "custody" for habeas purposes. *See Jones v. Cunningham*, 371 US. 236, 243 (1963) (parolee "in custody" due to "conditions which significantly confine and restrain his freedom").[3]

Second, this infringement on Mr. Orellana's freedom and privacy is illegal. Mr. Orellana received a bond hearing because he is eligible for release on bond and conditions. *See* 8 U.S.C. § 1226(a). Where a bond hearing has been requested, the decision on bond and conditions is made by the Immigration Judge alone, based on the due process provided in the bond hearing. *See* 8 C.F.R. §§ 1003.19, 1236.1(d). Here, the administrative process has been completed, and Mr. Orellana won. Even if ICE is dissatisfied with the outcome of that process, there is no authority for ICE to unilaterally impose additional conditions of release without the Immigration Judge's authorization and without any other due process being provided to the noncitizen. *Cf. Hernandez-Lara*, 10 F.4th at 40. Thus, Mr. Orellana is being deprived of his liberty unlawfully in violation of the Fifth Amendment's due process requirements. Additionally, in this instance, the additional conditions unilaterally imposed by ICE in violation of the Immigration Court's bond order constitute a massive, warrantless, and unreasonable invasion of Mr. Orellana's privacy, in

---

[3] *See also Justices of Boston Mun. Ct. v. Lydon*, 466 U.S. 294, 300-01 (1984) (holding that petitioner released on recognizance subject to conditions such as appearance as ordered by court "in custody" for habeas purposes); *Ali v. Napolitano*, No. 12-11384, 2013 WL 3929788, at *3 (July 26, 2013) (holding noncitizen granted withholding of removal but subject to order of supervision, including biennial reporting requirement, "in custody"); *Parsons v. Gilbert*, No. 1:16-cv-02343, 2018 WL 835661, at *4 (Feb. 13, 2018) (finding § 1983 plaintiff to be in custody in part because plaintiff "suffered from a complete lack of freedom" with respect to ankle monitor); *accord Peyton v. Rowe*, 391 U.S. 54, 64 (1968) (holding that the custody requirement "should be liberally construed").

violation of his Fourth Amendment rights. *See Grady v. North Carolina*, 575 U.S. 306, 309-10 (2015) (per curiam) (requirement to wear tracking device in civil context constitutes Fourth Amendment search); *see also Carpenter v. United States*, 585 U.S. 296, 313 (2018) (cell phone location tracking invaded reasonable expectation of privacy when it functioned "as if [the government] had attached an ankle monitor to the phone's user").

The government suggests that Mr. Orellana should pursue administrative remedies, but he already did. The "district director" (meaning ICE's field office) made an initial custody determination to hold Mr. Orellana without bond, and Mr. Orellana requested a redetermination of that decision from the Immigration Judge via a bond hearing. *See* 8 C.F.R. 1003.19(a), (c), (f) & 1236.1(d). At the bond hearing, the Immigration Judge exercised her power to redetermine Mr. Orellana's custody and ordered Mr. Orellana's release on a bond and certain generic conditions that did not include either GPS monitoring or ISAP. Mr. Orellana did not fail to exhaust the administrative process—he *won* the administrative process, and is merely seeking to prevent ICE from harming him in defiance of the outcome. And although the government cites 8 C.F.R. § 1236.1(d), that regulation does not appear to contemplate a circumstance where ICE held the noncitizen without bond, was later reversed at a bond hearing by an Immigration Judge, and then invented new conditions of release outside the scope of the Immigration Judge's order.[4]

_____

[4] In a different case, an Immigration Judge in Massachusetts held last week that 8 C.F.R. § 1236.1(d) is *not* an administrative remedy for this exact circumstance. This decision, in redacted form, is being filed with the Supplemental Declaration of Attorney Weisman. This decision confirms the futility of the proposed administrative process. *See Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463 (D. Mass. 2010) (explaining that there is no statutory exhaustion requirement for challenges to immigration detention, and courts have particular latitude to hear allegedly unexhausted claims where (a) the detainee "may suffer irreparable harm if unable to secure immediate judicial consideration of his claim"; (b) "substantial doubt exists about whether the agency is empowered to grand meaningful redress;" or (c) "the potential decisionmaker can be shown to have predetermined the issue" (internal quotation marks and ellipses omitted)). And even if that regulation were applicable, exhaustion would be excused because Mr. Orellana is being

Third, as described above, ICE's actions in connection with Mr. Orellana's continuing custody are depriving him of important personal property without any due process of law, specifically his cell phone and wallet. *See San Geronimo Caribe Project, Inc. v. Acevedo-Vila*, 687 F.3d 465, 478-79 (1st Cir. 2012) (deprivation of property without meaningful post-deprivation remedy or pursuant to established procedure violates due process). And particularly because any cell phone necessarily contains a highly private and personal mosaic of data concerning its owner's life, these seizures and the potential for unauthorized access also implicate the Fourth Amendment. *See Riley v. California*, 573 U.S. 373, 386 (2014) (cell phone data protected from warrantless search, even incident to arrest). Although the government may argue that a deprivation of property is not "custody" in most circumstances, here the property was seized during Mr. Orellana's arrest, and the deprivation is part and parcel to the ongoing custody being challenged in this petition. As noted above, this issue may be resolved shortly, but if not then return of the seized property should be within this Court's authority to address incident to its ruling on whether and how Mr. Orellana should be released. *See, e.g.*, *Boumediene v. Bush*, 553 U.S. 723, 780-81 (2008) (explaining that historically "common-law habeas corpus was, above all, an adaptable remedy" in which the "court's role was most extensive in cases of pretrial and noncriminal detention"); *Schlup v. Delo*, 513 U.S. 298, 319 (1995) ("[H]abeas corpus is, at its core, an equitable remedy."); *Flores-Powell*

---

irreparably harmed—the bracelet is a physical intrusion on his person, and it is unlawfully collecting detailed information on Mr. Orellana's private activities that the government will presumably retain. *See, e.g.*, *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (checkpoint program in violation of the Fourth Amendment presented irreparable injury because "the loss of constitutional freedoms, 'even for minimal periods of time, unquestionably constitutes irreparable injury'"); *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986) ("[E]xhaustion might not be required if [petitioner] were challenging . . . the ongoing deprivation of some other liberty interest."); *cf. Brito*, 22 F.4th at 256 (applying exhaustion requirement where petitioners were no longer in custody).

*v. Chadbourne*, 677 F. Supp. 2d 455, 474-78 & n.18 (D. Mass. 2010) (federal court selected conditions of release).

If the problems identified above were corrected (and no further problems arise), this case would likely be dismissed by agreement. But the case cannot be voluntarily concluded while Mr. Orellana is being subjected to custody in the form of an unauthorized 24/7 electronic surveillance device affixed to his body, coupled with ISAP conditions. Mr. Orellana would respectfully like to address these matters at the status conference, including whether the matter can be decided on the current record, or whether the Court would view additional evidence or amended pleadings as useful.

## **RESPONDENTS' STATUS REPORT**

A.    *The Petition Is Moot Because Petitioner Has Received The Relief Requested In His Petition.*

Article III of the Constitution limits the judicial power of the United States to the resolution of "cases" or "controversies." U.S. Const. art. III, ' 2. In this regard, the Constitution requires that an actual controversy must exist at all stages of review, not merely at the time the complaint is filed. *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974). Once a case or controversy is moot, a federal court no longer retains jurisdiction to adjudicate the merits of the case. U.S. Const. art. III, ' 2; *see also U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 21-22 (1994); *Ashcroft v. Mattis*, 431 U.S. 171, 172-3 (1977) (an action that has become moot fails to present a justiciable case or controversy within the meaning of Article III); *Overseas Military Sales Corp., Ltd v. Giralt-Armada*, 503 F.3d 12, 17 (1st Cir. 2007) (under mootness doctrine, when issues presented are no longer live, or when parties lack a cognizable interest in the outcome, dismissal of the case is compulsory). Thus, the question of mootness is a federal one, which a federal court must resolve before it assumes jurisdiction. *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974).

As described above, Petitioner was released from detention on May 27, 2025. Given that this was the specific relief requested in his Petition, *see* Doc. 1 at p. 6, Petitioner's release moots the issues raised by the Petition and deprives this Court of habeas jurisdiction. *See* U.S. Const. at III; *see also U.S. Bancorp. Mortgage Co.*, 513 U.S. at 21-22 (since a case or action is moot, a federal court no longer retains jurisdiction to adjudicate the merits of a case); *Ali v. Smith*, Civil Action No. 17-11689-GAO, Document No. 9 (Jan. 1, 2018) (granting respondent's motion to dismiss as moot because petitioner no longer in ICE custody); *accord Lopez v. Souza*, Civil Action No. 18-10603-RGS, Document No. 8 (April 20, 2018) (granting respondent's motion to dismiss in light of the representation that petitioner had been released from custody); *Fernandez v. Moniz et al.*, Civil Action No. 18-10057-WGY, Document No. 11 (Feb. 5, 2018) (granting respondent's motion to dismiss as moot); *Verde-Llanes v. Moniz*, Civil Action No. 17-11894-LTS, Document No. 18 (Jan. 17, 2018) (" In light of the status report . . . and the supporting affidavit reflecting that ICE has released the petitioner from custody, the pending habeas petition is dismissed without prejudice as moot"); *Van Dang v. McDonald*, Civil Action No. 17-12293-RGS, Document No. 9 (Dec. 18, 2017) ("In light of Petitioner's release from custody, this case is now moot"); *Long v. McDonald*, Civil Action No. 17-10397, Document No. 15 (March 27, 2017) (granting motion to dismiss for mootness).

> B.   *Being Subject To GPS Monitoring And ISAP Does Not Constitute Custody, And Even If It Did, Petitioner's Relief, If Any, Does Not Rest With District Court.*

28 U.S.C. § 2241 vests courts with authority to issue writs of habeas corpus to individuals "in custody in violation of the Constitution or laws or treaties of the United States." "The custody requirement 'is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty.'" *I.A. Ali v. Napolitano*, No. 12-cv-11384-FDS, 2013 WL 3929788, at *2 (D. Mass. Jul. 26, 2013) (quoting *U.S. ex rel. Bailey v. U.S. Commanding Officer of Office of Provost*

*Marshal, U.S. Army*, 496 F.2d 324, 325-26 (1st Cir. 1974)).  While restraints short of incarceration may in some circumstances satisfy the "in custody" requirement for habeas relief, the restraint must significantly compromise the individual's "liberty to do those things which in this country free men are entitled to do." *Jones v. Cunningham*, 371 U.S. 236, 243 (1963).

Courts in this District have held that a petitioner is released from custody even if he is placed on an ankle monitoring system. *See Castaneda v. Souza*, 952 F. Supp. 2d 307, 309 n.2 (D. Mass. 2013) (stating that the Government "complied with" the Court's order granting a habeas petition "by ICE choosing to release Castaneda on her own recognizance and pursuant to GPS monitoring"); *see also Lemonious v. Streeter*, 2020 WL 3713032 (D. Mass. 2020) (referring to "GPS monitoring" as an "alternative condition[] of release" in the immigration context).  Even in a case where the court assumed *arguendo* that GPS monitoring constituted being in custody, the court still granted a motion to dismiss another habeas action.  *See López López v. Charles*, No. 12-CV-101445-DJC, 2020 WL 419598, at *3 (D. Mass. Jan. 26, 2020).

Other courts have found that an ankle monitoring system can be a restraint on one's liberty, but Respondent contends that that scenario is not present here.  In *Lopez Lopez*, J. Casper found, for example, that an individual subject to electronic monitoring by GPS could be in custody if the restraint "significantly compromises the individual's liberty to do those things in this country free men are entitled to do."  *Id.* (citing *Jones v. Cunningham*, 371 U.S. 236, 243 (1963).  Such significant limitations of one's freedom included "when he can travel, where he can reside, with whom he can associate, what information he may keep confidential, and the type of employment in which he can engage."  *Id.* (citing *I.A. Ali v. Napolitano*, No. 12-CV-11384-FDS, 2013 WL 3929788, at *4).  Here, none of these restraints or conditions apply to Petitioner.  Petitioner is free to travel, determine where he wants to reside, associate with whomever, and pursue what

employment he can engage in.  As a result, Petitioner is not in custody and his petition should be dismissed by this Court.

However, even if this Court should determine that Petitioner is in custody, the conditions imposed by ICE are lawful.  8 U.S.C. § 1226(a)(2) provides that an alien may be released on "conditional parole".  In line with this statutory authority, ICE's regulations permit ICE to impose conditions on release.  *See* 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8).  Additionally, Petitioner's relief, if any, is not with the district court but, rather, with the Immigration Judge pursuant to 8 C.F.R. § 1236.1(d)(1) and (2):

> (d) Appeals from Custody Decision
>
> (1) Application to immigration judge.  After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 C.F.R. part 1240 becomes final, request amelioration of the conditions under which he or she may be released.  Prior to such final order, and except as otherwise provided in this chapter, the immigration judge is authorized to exercise the authority in section 236 of the Act (or section 242(a)(1) of the Act as designated prior to April 1, 1997 in the case of an alien in the deportation proceedings) to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in §1003.19 of this chapter. If the alien has been released from custody, an application for amelioration of the terms of release must be filed within 7 days of release.
>
> (2) ***Application to the district director.*** After expiration of the 7-day period in paragraph (d)(1) of this section, the respondent may request review by the district director of the conditions of his or her release.

Petitioner, once released, has an administrative remedy available to him regarding the requirements of GPS monitoring and ISAP.  By regulation, Petitioner can seek to ameliorate conditions of release with the immigration court if a motion is filed within 7 days of release and if there is no final order of removal, and any decision by immigration judge can be appealed to the Board of Immigration Appeals (8 C.F.R. § 1236.1(d)(1) and (2)).

Dated: June 2, 2025                          Respectfully submitted,

                                             For Respondents:

                                             */s/ Nicole M. O'Connor*
                                             Nicole M. O'Connor
                                             Assistant U.S. Attorney
                                             District of Massachusetts
                                             1 Courthouse Way, Suite 9200
                                             Boston, MA 02210
                                             617-748-3112
                                             Nicole.o'connor@usdoj.gov

                                             For Petitioner:

                                             */s/ Daniel L. McFadden*

                                             Daniel L. McFadden (BBO # 676612)
                                             Adriana Lafaille (BBO # 680210)
                                             Julian Bava (BBO # 712829)
                                             AMERICAN CIVIL LIBERTIES UNION
                                             FOUNDATION OF MASSACHUSETTS, INC.
                                             One Center Plaza, Suite 850
                                             Boston, MA 02108
                                             (617) 482-3170
                                             dmcfadden@aclum.org
                                             alafaille@aclum.org
                                             jbava@aclum.org

                                             Mara J. Weisman
                                             Staff Attorney
                                             BBO #714105 (MA); #5979737 (NY)
                                             Catholic Charities of Boston
                                             275 W Broadway
                                             Boston, MA 02127
                                             (617) 464-8114
                                             Mara_weisman@ccab.org

                                             Leslie Feldman-Rumpler
                                             Attorney-at-Law
                                             BBO # 555792
                                             4 Cypress Street, Ste. 7
                                             Brookline, MA 02445
                                             (617) 728-9944
                                             Leslie@feldmanrumplerlaw.com