**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOSE DANIEL ORELLANA JUAREZ, | ) ) ) |
| Petitioner, | ) ) ) |
| v. | ) ) |
| ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility PATRICIA HYDE, Field Office Director, TODD LYONS, Acting Director U.S. Immigrations and Customs Enforcement, and KRISTI NOEM, U.S. Secretary of Homeland Security, | ) ) ) ) ) ) ) ) ) |
| Respondents. | ) ) |

C.A. No. 25-11266-MJJ

## **SUPPLEMENTAL DECLARATION MARA J. WEISMAN, ESQ.**

I, Mara J. Weisman, hereby declare under penalty of perjury that the following statements are based on my personal knowledge and are true and correct to the best of my knowledge:

1. I previously submitted a declaration in this action, filed May 9, 2025.

2. After I filed that declaration, the government notified me on May 12, 2025, that ICE was taking Mr. Orellana out of the Expedited Removal process, and would instead issue him a Notice to Appear ("NTA") and place him into removal proceedings. This information is memorialized in the government's Status Report and Assented-to Motion to Continue Hearing (D.E. 15).

3. Because Mr. Orellana has no criminal record and no connections to terrorism, it was my understanding that he was eligible to be released on bond during his removal proceedings pursuant to 8 U.S.C. § 1226(a).

4. On May 13, 2025, I filed a Motion for Bond in the Immigration Court on behalf of Mr. Orellana, along with supporting documentation.

5. On May 15, 2025, the Immigration Court noticed Mr. Orellana's bond hearing for May 27, 2025, at 8:30 a.m. A true and accurate copy of the notice, with certain personal information redacted, is attached hereto as Exhibit A.

6. On May 26, 2025, I filed additional documentation in support of the Motion for Bond in the Immigration Court on behalf of Mr. Orellana.

7. On or about May 22, 2025, the government filed a "Bond Submission" regarding Mr. Orellana and supporting documentation in the Immigration Court.

8. On the morning of May 27, 2025, I appeared for Mr. Orellana's scheduled bond hearing in the Immigration Court. There is not presently a transcript of that hearing available. However, I recall from that hearing that:

    a. The government principally argued that Mr. Orellana should be detained without bond due to flight risk.

    b. The Immigration Judge ordered that Mr. Orellana be released on a bond of $4,000 and certain conditions.

    c. The government did not request, at any time, that Mr. Orellana's conditions of release include GPS monitoring or the Intensive Supervision Appearance (ISAP) program.

9. A true and accurate copy of the Immigration Judge's bond order, with certain personal information redacted, is attached hereto as Exhibit B.

10. Immediately after the hearing, Mr. Orellana's sponsor traveled to the ICE Boston Field Office in Burlington, Massachusetts, to pay the bond. However, at approximately 1:00pm,

she informed me that she was turned away upon arriving. She informed me that an ICE officer stated that they were no longer taking any more bond payments for the day and that she should return the next morning.

11. On May 28, 2025, at approximately 9:30am, Mr. Orellana's sponsor informed me that she arrived at the ICE Boston Field Office in Burlington to pay Mr. Orellana's bond. She informed me that an officer stated that because ICE had reserved appeal at the hearing, the officer would need to get special approval for Mr. Orellana's release and that the officer would call her if she received approval.

12. At approximately 10:30am, Mr. Orellana's sponsor informed me that an ICE officer contacted her to let her know that Mr. Orellana's release was approved and that she could come and pay his bond.

13. At approximately 11:00am, Mr. Orellana's sponsor paid a $4,000 bond to ICE for Mr. Orellana's release. She informed me that the officer stated that she would receive a phone call when it was time to come to the Burlington office to pick up Mr. Orellana.

14. Mr. Orellana's sponsor informed me that she never received a phone call from ICE. At this point, it had been over 24 hours since my client had been ordered released and the bond was initially tendered. I traveled to the ICE office in Burlington and arrived around 4:00pm. Mr. Orellana was finally released at approximately 5:00pm on May 28, 2025.

15. When Mr. Orellana was released, he was wearing a GPS monitor that had been attached and secured to his ankle by ICE.

16. When Mr. Orellana was released, he was ordered by ICE to report to an office in Framingham, Massachusetts, on June 2, 2025.

17. It is my understanding that, when Mr. Orellana was released, the cash in his wallet was returned to him.  However, I understand that an ICE officer told him that his wallet and cellular phone has been lost, and that he could return on Thursday, June 5 to attempt to retrieve his belongings.  I subsequently raised this matter to opposing counsel in this case.  At 4:37pm on June 2, 2025, opposing counsel informed me that the items had been located and will be returned.  They have not yet been returned as of the execution of this declaration.

18. On June 2, Mr. Orellana reported to the Framingham office as instructed by ICE.

19. At the Framingham office, Mr. Orellana was enrolled in the ISAP program.  He was required to sign agreements to obey various conditions, including wearing the GPS monitor, remaining within a geographic area designed by ICE, adhering to an approved schedule, and allowing ISAP personnel to enter his home.  The schedule includes appearing again on June 16, 2025.  The geographic restrictions prohibit Mr. Orellana from leaving Massachusetts, except for New Hampshire, Rhode Island, and Connecticut.  A true and accurate copy of the ISAP documentation provided to Mr. Orellana, with certain personal information redacted, is attached hereto as Exhibit C.

20. Additionally, I understand that ISAP communicated to Mr. Orellana orally that he should be home by 10 p.m. each night when possible, and that he must speak with his ISAP supervisor on June 3 by phone to report the results of his latest Immigration Court appearance (which took place the afternoon of June 2).

21. The GPS monitor remains attached to Mr. Orellana's leg.  Mr. Orellana remains enrolled in ISAP and subject to its conditions.  I have received no indication that the GPS monitor or ISAP conditions will be removed at any future time.

22. Attached hereto as Exhibit D is a true and accurate copy of an order, with certain personal information redacted, that issued on May 29, 2025 in a separate immigration case in the Chelmsford Immigration Court.

Executed June 2, 2025.

_____
Mara L. Weisman