UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE DANIEL ORELLANA JUAREZ,<br><br>Petitioner,<br><br>v.<br><br>ANTONE MONIZ, Superintendent, Plymouth Correctional Facility, PATRICIA HYDE, Field Office Director, TODD LYONS, Acting Director U.S. Immigrations and Customs Enforcement, and KRISTI NOEM, U.S. Secretary of Homeland Security,<br><br>Respondents. | Civil Action No. 25-cv-11266-MJJ |

**MEMORANDUM OF DECISION AND ORDER**

June 11, 2025

JOUN, D.J.

Jose Daniel Orellana Juarez ("Mr. Orellana Juarez" or "Petitioner") petitions the Court under 28 U.S.C. § 2241 and the Due Process Clause of the Fifth Amendment for relief from conditions set by Immigration and Customs Enforcement ("ICE"). For the reasons stated below, Mr. Orellana Juarez's petition is GRANTED.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

   **A.   Mr. Orellana Juarez's Arrest and Detention**

Mr. Orellana Juarez was born in 2000 and is a citizen of Guatemala. [Doc. No 1 at ¶ 1; Doc. No. 10 at ¶ 2]. In August 2022, Mr. Orellana Juarez arrived in the United States. [Doc. No. 10 at ¶ 5]. He has resided in Massachusetts since November 2023. [Doc. No. 10 at ¶ 6]. Mr. Orellana Juarez has never been charged with or convicted of any crime. [Doc. No. 1 at ¶ 2].

1

On May 5, 2025, Mr. Orellana Juarez was stopped and arrested at a traffic light in Framingham, Massachusetts by U.S. Immigration and Customs Enforcement ("ICE"). [Doc. No. 1 at ¶ 4; Doc. No. 10 at ¶ 8]. Mr. Orellana Juarez was taken by van to the ICE Boston Field Office in Burlington and placed in a holding cell, and was then given an Expedited Removal Order. [*Id*. at ¶ 9; Doc. No. 1 at ¶ 8]. The next day, on May 6, 2025, Mr. Orellana Juarez was transferred to the Plymouth County Correctional Facility. [Doc. No. 10 at ¶ 13]. He then retained counsel on May 7, 2025, who informed ICE that Mr. Orellana Juarez had a fear of persecution upon return to Guatemala and provided ICE with evidence that Mr. Orellana Juarez has been present in the United States for more than two years. [Doc. No. 1 at ¶¶ 14–15]. Subsequently, on or about May 12, 2025, ICE determined that it would remove Petitioner from Expedited Removal proceedings under 8 U.S.C. § 1225 and place him into removal proceedings in accordance with 8 U.S.C. § 1229(a). [Doc. No. 15 at ¶ 2; Doc. No. 21 at ¶ 2].

### B. Immigration Court Proceedings and ICE's Conditions of Release

On May 13, 2025, Mr. Orellana Juarez's attorney filed a Motion for Bond in the Immigration Court. [Doc. No. 21 at ¶ 4]. On May 27, 2025, the Immigration Judge ("IJ") granted Mr. Orellana Juarez's request for a change in custody status and released him from custody under a bond of $4000. [Doc. No. 21-2 at 2]. The IJ further held that:

> The Respondent is hereby warned of his obligation to file Form EOIR-33 whenever he changes his address during the pendency of this proceeding. The Respondent is also warned of his obligation to attend the hearings at the time and place designated by the immigration court. The Respondent's failure to attend any hearing scheduled by the immigration court may result in a removal order entered in his absence. Finally, the Respondent must learn and comply with the laws of the United States and the state of his residence.

[*Id*.]. On May 28, 2025, upon payment of his bond, Mr. Orellana Juarez was released from Plymouth County Correctional Facility. [Doc. No. 21 at ¶ 14]. When Mr. Orellana Juarez was

2

released, he was wearing a GPS monitor that had been attached and secured by ICE. [*Id*. at ¶ 15]. Upon release, Mr. Orellana Juarez was also ordered by ICE to report to an office in Framingham, Massachusetts on June 2, 2025. [*Id*. at ¶ 16].[1]

On June 2, 2025, Mr. Orellana Juarez reported to the Framingham office as instructed by ICE, where he was enrolled in the Intensive Supervision Appearance Program ("ISAP"). [*Id*. at ¶¶ 18–19]. Mr. Orellana Juarez was required to sign an agreement to obey various conditions, including wearing the GPS monitor, remaining within a geographic area designated by ICE, adhering to an approved schedule, and allowing ISAP personnel to enter his home. [*Id*. at ¶ 19]. The schedule included appearing again on June 16, 2025, and the geographic restrictions prohibit Mr. Orellana Juarez from leaving Massachusetts, except for New Hampshire, Rhode Island, and Connecticut. [*Id*.; Doc. No. 21-3]. Additionally, ISAP communicated to Mr. Orellana Juarez orally that he should be home by 10 PM each night when possible, and that he must speak with his ISAP supervisor on June 3, 2025, by phone to report the results of his latest Immigration Court appearance. [*Id*. at ¶ 20]. On June 3, 2025, the IJ for Mr. Orellana Juarez's case "closed the case due to a failure to prosecute." [Doc. No. 24-1 at 1]. Mr. Orellana Juarez continues to be subject to the GPS monitor and ISAP. [Doc. No. 23 at 2].

## II. ANALYSIS

### A. **Jurisdiction**

The parties disagree about whether Petitioner's relief lies with this Court. Respondents argue that Petitioner's relief lies with the IJ pursuant to 8 C.F.R. § 1236.1(d)(1) and (2), which

---

[1] At the time of his release, an ICE officer informed Mr. Orellana Juarez that his cellphone and wallet had been lost. However, these items have apparently been found and will be returned. [*Id*. at ¶ 17].

govern appeals from custody decisions.[2] In contrast, Mr. Orellana Juarez argues relief is appropriate in this Court because he is not seeking to appeal the IJ's custody decision pursuant to 8 C.F.R. § 1236.1(d)(1) and (2). Rather, Petitioner argues that ICE has not abided by and does not have the authority to deviate from the IJ's order by imposing additional conditions not originally set by the IJ. I agree with Petitioner and find that I have jurisdiction over this case.

It is undisputed that ICE made an initial custody determination to hold Mr. Orellana Juarez without bond, and Mr. Orellana Juarez requested a redetermination of that decision before an IJ via a bond hearing. It is also undisputed that at the bond hearing, the IJ ordered Mr. Orellana Juarez released on bond with certain conditions that did not include GPS monitoring or ISAP. Upon release, ICE imposed additional conditions on Petitioner, which continue after closure of his immigration case. Here, Petitioner is "not asking for review of an order of removal; [he is] not challenging the decision to detain [him] in the first place or to seek removal; and [he is] not even challenging any part of the process by which [his] removability will be determined." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Rather, Mr. Orellana Juarez is challenging "the extent of the Government's detention authority" under the 8 U.S.C. § 1226(a)(2)

---

[2] 8 C.F.R. § 1236.1(d) Appeals from custody decisions–

> (1) Application to immigration judge. After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 1240 becomes final, request amelioration of the conditions under which he or she may be released. Prior to such final order, and except as otherwise provided in this chapter, the immigration judge is authorized to exercise the authority in section 236 of the Act (or section 242(a)(1) of the Act as designated prior to April 1, 1997 in the case of an alien in deportation proceedings) to detain the alien in custody, release the alien, an determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter, If the alien has been released from custody, an application for amelioration of the terms of release must be filed within 7 days of release.
>
> (2) Application to the district director. After expiration of the 7-day period in paragraph (d)(1) of this section, the respondent may request review by the district director of the conditions of his or her release.

of the Immigration and Nationality Act ("INA") and 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). *Id*. at 296. Thus, I find that relief appropriately lies within this Court. *See Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 11 (1st Cir. 2007) ("[D]istrict courts retain jurisdiction over challenges to the legality of detention in the immigration context.").

### B. Common Law Administrative Exhaustion

Respondents further argue that because Petitioner has failed to comply with common law exhaustion requirements recognized by the First Circuit, this Court should decline to exercise habeas jurisdiction. Respondents specifically point to *Brito v. Garland*, which held that "[e]xhaustion allows 'an agency the first opportunity to apply [its] expertise' and 'obviat[es] the need for [judicial] review in cases in which the agency provides appropriate redress.'" 2 F.4th 240, 256 (1st Cir. 2021). In *Brito*, the petitioners argued the IJs should have considered alternatives to detention and the petitioners' ability to pay bond. *Id*. at 245. In determining whether those petitioners were mandated to exhaust their administrative remedies first, the First Circuit stated that "the agency is better equipped than are the federal courts to determine what alternatives to detention an IJ has the authority to enforce." *Id*. at 256. I am unconvinced by Respondents' argument for several and separate reasons.

First, *Brito* is distinguishable from the facts and arguments here. Mr. Orellana Juarez does not challenge the IJ's decisions regarding the setting of bond or conditions of release. Rather, he challenges ICE's imposition of additional conditions of release not imposed by the IJ. Second, it appears that Mr. Orellana Juarez has no avenue to seek relief in the immigration court as he has pointed to at least one very recent case where an IJ determined that she did *not* have authority to alter additional conditions imposed by ICE, after she had determined that individual be released

on bond.[3] [Doc. No. 21-4]. That is the very circumstance Petitioner finds himself here. Third, as of June 3, 2025, the IJ in Mr. Orellana Juarez's case closed the case due to a failure to prosecute. *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992) (citing *Gibson v. Berryhill*, 411 U.S. 564, 575, n. 14 (1973) ("[A]n administrative remedy may be inadequate 'because of some doubt as to whether the agency was empowered to grant effective relief.'")). In any event, as elucidated below, I find that Mr. Orellana Juarez has sufficiently shown deprivation of his liberty interest, which weighs against requiring administrative exhaustion. *See id*. (cleaned up) (finding that exhaustion might not be required if petitioner challenged an ongoing deprivation of her liberty interest). Thus, for any one of these reasons, this is not a case "where a [Petitioner's] failure to exhaust her administrative remedies precludes [him] from obtaining federal review of claims that would have properly been raised before the agency in the first instance." *Id*. at 255.

### C. Custody

Mr. Orellana Juarez argues that he remains in custody in violation of the Due Process Clause of the Fifth Amendment by virtue of his placement in the Intensive Supervision Appearance Program ("ISAP") and the requirement that he wear a GPS monitor. Respondents contend that Mr. Orellana Juarez has not satisfied the custody requirement for habeas relief.

---

[3] In that case, the IJ denied relief on May 29, 2025, stating:

> The Court previously entered an order granting $1,500 bond in the above captioned matter. The Respondent posted the bond amount but, with his release, ICE has placed him additional conditions of release, including GPS monitoring with intensive/frequent in-person check-in at the ICE office located at Burlington, MA. The Respondent objects to those conditions and seeks this Court's review of those additional conditions of release. The Respondent, however, is unable to cite to any law or decisions regarding the Court's authority to alter conditions of release posed by ICE when the Respondent is no longer in ICE custody. contra. INA section 236(a).

"Relief by way of a writ of habeas corpus extends to a person in custody if the petitioner can show that she is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Lopez Lopez v. Charles*, No. 12-cv-101445, 2020 WL 419598, at *3 (D. Mass. Jan. 26, 2020) (quoting 28 U.S.C. § 2241(c)(3)). "Restraints short of incarceration may satisfy the 'in custody' requirement for habeas relief, but the restraint must significantly compromise the individual's 'liberty to do those things which in this country free men are entitled to do.'" *Id.* (quoting *Jones v. Cunningham*, 371 U.S. 236, 243 (1963)). The Supreme Court has found the custody requirement met "when a petitioner is on parole, *Jones v. Cunningham*, 371 U.S. 236, 243 (1962), awaiting trial on bail, [*Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973)], or on military reserve status, *Strait v. Laird*, 406 U.S. 341 (1972)." *U.S. ex rel. Bailey v. U.S. Commanding Officer of Off. of Provost Marshal, U.S. Army*, 496 F.2d 324, 325 (1st Cir. 1974) (cleaned up).

Mr. Orellana Juarez is being required to follow conditions set by ICE, after an IJ already dismissed his case for failure to prosecute. Specifically, Mr. Orellana Juarez is being required to wear a 24/7 GPS device on his ankle which allows ICE to monitor him constantly. Additionally, ICE enrolled Mr. Orellana Juarez in an intensive supervision program which includes the requirements of regular reporting, allowing ICE to enter his residence at home visits, a curfew of 10 PM, and geographic restrictions which prohibit him from traveling outside of Massachusetts, New Hampshire, Rhode Island, and Connecticut. Mr. Orellana Juarez's situation is analogous to the petitioner on parole in *Jones* who was found to be in custody:

> He must periodically report to his parole officer, permit the officer to visit his home and job at any time, and follow the officer's advice. He is admonished to keep good company and good hours, work regularly, keep away from undesirable places, and live a clean, honest, and temperate life. Petitioner must not only faithfully obey these restrictions and conditions but he must live in constant fear that a single deviation, however slight, might be enough to result in his is being returned to

> prison to serve out the very sentence he claims was imposed upon him in violation of the United States Constitution.

371 U.S. at 242. ICE has "control over where and when he can travel," "what information he may keep confidential," where he can go during certain hours due to curfew, and Petitioner is obligated to appear for check-ins at the discretion of ICE. *Ali v. Napolitano*, No. 12-cv-11384, 2013 WL 3929788, at *4 (D. Mass. July 26, 2013) (finding "custody" under those facts). I too am convinced that "[w]hile petitioner is 'free' in the sense that he is not behind prison walls," Mr. Orellana Juarez is subject to custody sufficient for habeas relief. *Id*.; *see also Hensley*, 411 U.S. at 351 (finding petitioner in custody where his "freedom of movement rest[ed] in the hands of state judicial officers, who may demand his presence at any time and without a moment's notice" and where "the State has emphatically indicated its determination to put him behind bars, and the State has taken every possible step to secure that result."). Mr. Orellana Juarez lives in reasonable fear that a violation may result in physical detention, and ultimately trigger removal proceedings against him. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 29 (1st Cir. 2021) (cleaned up) ("Deportation is a drastic measure, often amounting to lifelong banishment or exile.").

### D. ICE's Authority to Hold

Mr. Orellana Juarez contends that the indefinite conditions set by ICE, after the IJ closed his immigration case for failure to prosecute, are an unlawful restriction on his liberty and a violation of his right to due process of law. Respondents contend that the conditions imposed by ICE are statutorily lawful pursuant to 8 U.S.C. § 1226(a)(2), and regulations, 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8).

"Under [8 U.S.C. § 1226(a) of the Immigration and Nationality Act], the government 'may release' a detained noncitizen on 'bond ... or conditional parole.'" *Lyons*, 10 F.4th at 26. "An Immigration and Customs Enforcement ("ICE") officer makes the *initial* detention

8

determination for noncitizens subject to detention under section 1226(a). If the officer opts for continued detention, the noncitizen can seek review of that decision at a bond hearing before an IJ." *Id*. (emphasis added) (citing 8 C.F.R. §§ 236.1(c)(8) (2020), 236.1(d)(1)). "[U]nder current BIA precedent, a noncitizen detained under section 1226(a) must demonstrate 'to the satisfaction of the Immigration Judge that he or she merits release on bond'" by proving he or she is not a danger to community or a flight risk. *Lyons*, 10 F.4th at 27 (cleaned up).

Given this sequential framework, Respondents are correct that section 1226(a)(2) and 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8) provide ICE with authority to *initially* set conditional parole and where the noncitizen does not seek review of the detention before an IJ. However, I cannot read ICE's initial detention authority pursuant to section 1226(a)(2) and 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8) in isolation; I must look to the statute and regulations in their entirety. The Supreme Court has held that after the initial detention determination, a petitioner may request a bond hearing before an IJ, who has the authority to determine "the alien's detention conditions." *See Johnson v. Guzman Chavez,* 594 U.S. 523, 527–28 (2021) (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1)); *see also Huanga v. Decker*, 599 F. Supp. 3d 131, 138 (S.D.N.Y. 2022) ("Section 1226(a) gives the Attorney General the choice to 'continue to detain the arrested alien,' or 'release the alien on (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole.' The Attorney General has delegated this authority to immigration judges."). Following this logic, Respondents may not impose additional conditions *after an IJ has ordered release on a bond and set conditions of release*, as here. In fact, Respondents have provided no supporting authority for the proposition that they may deviate from an IJ's bond hearing determination. Rather, contrary to Respondents' position, the regulations governing custody redetermination

9

hearings provide for only two circumstances in which an IJ's bond order may be modified: (a) the noncitizen or ICE may appeal the IJ's custody redetermination to the Board of Immigration Appeals ("BIA"), *see* 8 C.F.R. § 1003.19(f); and (b) a noncitizen may later request a new custody re-determination hearing upon a showing of materially changed circumstances, *see id*. § 1003.19(e). According to the plain language of these regulations, an IJ or the BIA holds the authority to redetermine custody conditions, not Respondents.

As Justice Lynch noted, "[a]rresting officers have limited knowledge and should be inclined to err on the side of caution. IJs in bond hearings have much more knowledge and the benefit of arguments from both sides. In allowing IJs to ameliorate -- or improve -- bond conditions, the regulation [8 C.F.R. § 236.1(d)(1)] necessarily states that IJs may deviate from the standards governing arresting officers." *Lyons*, 10 F.4th at 50 (Lynch, J. dissenting). Here, after reviewing the evidence presented by both parties, the IJ ameliorated conditions for Petitioner. In response, Respondents unlawfully reinstituted custodial conditions on Petitioner. To take the Respondents' position as true would be to render the AG's delegation to an IJ meaningless, and would defeat the purpose of having a knowledgeable, neutral third party review the appropriateness of a noncitizen's detention. Significantly, absent relief, Petitioner's situation highlights a real constitutional risk. Here, the IJ closed Petitioner's case, yet he remains in ICE custody indefinitely. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects" and "permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Thus, Mr. Orellana Juarez has sufficiently demonstrated that he remains in custody in violation of the Due Process Clause of the Fifth Amendment.

### III. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas is <u>GRANTED</u>. Petitioner may not be subjected to conditions of release that are not consistent with the terms as set by the Immigration Judge after the bond hearing. Petitioner is to be released from 24/7 GPS tracking and from ISAP immediately. Additionally, if Mr. Orellana Juarez's cellphone and wallet have not been returned to him already, Respondents are directed to do so immediately.

SO ORDERED.

/s/ Myong J. Joun  
United States District Judge